UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CORDERO,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF SAN FRANCISCO, et al.,<br><br>    Defendants. | Case No. 19-cv-01834-JSC<br><br>**ORDER RE: SUMMARY JUDGMENT**<br>Re: Dkt. No. 63 |

David Cordero alleges San Francisco police officers used excessive force when they stopped and arrested him for running several stop lights at high speed during the early morning hours of August 12, 2018. Now pending before the Court is Defendants' motion for summary judgment on all claims. After carefully considering the parties' written submissions and video evidence, and having had the benefit of oral argument on November 10, 2022, the Court GRANTS in part and DENIES in part the motion.

**I.    Section 1983: Excessive Force Claim (First Cause of Action)**

When evaluating a Fourth Amendment claim of excessive force, courts ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "Determining whether an officer's use of force violates the Fourth Amendment requires balancing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Orn v. City of Tacoma*, 949 F.3d 1167, 1174 (9th Cir. 2020) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

"That inquiry generally involves an assessment of factors such as 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and

1  whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting
2  *Graham v. Connor*, 490 U.S. at 396). "Because the excessive force inquiry nearly always requires
3  a jury to sift through disputed factual contentions, and to draw inferences therefrom," summary
4  judgment in excessive force cases "should be granted sparingly." *Smith v. City of Hemet,* 394 F.3d
5  689, 701 (9th Cir. 2005) (en banc) (cleaned up).

### A.    Officer Oesterich

Officer Oesterich's motion for summary judgment on the Section 1983 claim for excessive force is DENIED.  Plaintiff contends Officer Oesterich used excessive force when he "struck [him] with his closed fists approximately five times and kneed [him] in [his] legs and back area numerous times."  (Dkt. No. 66-2 ¶ 8.)  Officer Oesterich argues that the force used was reasonable as a matter of law "to protect himself and to get Plaintiff into custody."  (Dkt. No. 63 at 12.)

The Court disagrees.  Genuine disputes of material fact preclude judgment as a matter of law.  For example, Officer Oesterich's and Plaintiff's recollections differ as to (1) Plaintiff's resistance after Officer Oesterich took Plaintiff to the ground and (2) Plaintiff's hand movements during the arrest.[1]  Once on the ground, Plaintiff claims he "had completely surrendered," did not attempt to flee, and did not attempt to punch or kick Officer Oesterich or in any way threaten him. (Dkt. No. 66-2 at ¶ 13.) According to Officer Oesterich, in contrast, Plaintiff was attempting to crawl away. Officer Oesterich therefore got on top of Plaintiff to keep him from escaping. When he did so, it looked like Plaintiff was moving his hands toward his waistband.  Officer Oesterich became concerned that Plaintiff had a weapon and tried to force Plaintiff's hands from under his body.  He also told Plaintiff to move his hands.  When that did not work, Officer Oesterich struck Plaintiff with his fist and knee in order to handcuff Plaintiff.  (Dkt. No. 63-15 ¶¶ 13-17.)   As to his hand location during the incident, Plaintiff testified that he could not remember where his hands were, but "there was no reason for [his hands] to be beneath his body." (Dkt. No. 69 at 14.)  It is

---

[1] Plaintiff confirmed at the summary judgment hearing that he is not challenging Officer Oesterich's use of force in pulling Plaintiff off his motorcycle.  To the extent the complaint can be read as challenging such force, summary judgment is granted in Officer Oesterich's favor.

(left margin: United States District Court / Northern District of California)

undisputed that Plaintiff did not have a weapon, (Dkt. No. 66-2 ¶ 13; Dkt. No. 63-8 at 15), and Plaintiff claims he had completely surrendered, (Dkt. No. 66-2 ¶ 13). Officer Oesterich's police report says only that Plaintiff refused to place his hands behind his back. (Dkt. No. 63-8 at 13.) The report makes no mention of Plaintiff's hands reaching for a waistband. (*Id.*)

The available video evidence does not require the Court to adopt Oesterich's version of events over Plaintiff's testimony as a matter of law. *See Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018). First, the surveillance video supports an inference that Officer Oesterich immediately started punching Plaintiff before there was any time for the alleged resistance. (Sims Decl., Ex. B, Surveillance Camera 1 at 7:22:17.) Those initial strikes occurred before Officers Cotter and Williams joined the arrest. (*Id.*). Defendants argue that Plaintiff's hands were moving toward his waistband when Officers Oesterich *and* Cotter and Williams were trying to arrest him. (Dkt. No. 63 at 12; Dkt. No. 63-1 ¶ 10.) Thus, Defendants cannot justify Officer Oesterich's force that occurred *before* other officers were assisting him based on alleged resistance that occurred *after* those other officers arrived. Moreover, after those initial strikes, the video does not conclusively show the resistance Defendants describe, nor does it unambiguously display Plaintiff moving his hands towards his waistband. (*See*, *e.g.*, Sims Decl., Ex. B, Surveillance Camera 1 at 7:22:17.) Defendants cite Officer Cotter's body-worn camera for the proposition that Plaintiff reached for his waistband. (Dkt. No. 63 at 12.) But, based on the video evidence cited, a reasonable juror could find that the Officers had control of Plaintiff's hands. (*See* Cotter Decl. Ex. B at 11:23:05.)

In sum, substantial disputes exist as to "the facts and circumstances confronting" Officer Oesterich when he struck Plaintiff after taking Plaintiff to the ground. *Graham*, 490 U.S. at 397. Drawing all reasonable inferences in Plaintiff's favor, a trier of fact could find that Officer Oesterich did not observe Plaintiff moving his hands toward his waistband given the timing of the punches, the lack of a weapon, and Oesterich's failure to mention Plaintiff reaching for his waistband in the police report. *See Cruz v. City of Anaheim*, 765 F.3d 1076, 1080 (9th Cir. 2014). Moreover, a trier of fact could also find that Plaintiff's alleged refusal to give up his hands did not justify the use of force given the immediacy of the blows and the evidence that Plaintiff was not

1   actively resisting.  *See Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013).

2       **B.**    **Officer Cotter**

3   Plaintiff contends that while Officer Oesterich was striking and kneeing him,[2] Officer "Cotter ran over to me, kneeled down on my shoulder and struck me in the facial area with his closed fist approximately three times." (Dkt. No. 66-2 ¶ 9.)  After Plaintiff was handcuffed, but before he was searched, "defendant Cotter intentionally grabbed [Plaintiff's] neck and pressed [his] head toward the ground, and kept his knee pressed with extreme force on [his] neck and head area." (*Id.* ¶ 10.)

A genuine dispute exists as to the reasonableness of the strikes to the face.  Officer Cotter contends the blows were necessary because he saw Plaintiff putting his hands near his waistband and thus was concerned he might have a weapon, he was unable to get Plaintiff's helmet off, and the blows were designed to cause Plaintiff to raise his hands to his face thus enabling the officers to handcuff him.  (Dkt. No. 63-1 at ¶¶ 10-13.)  Like Officer Oesterich, Officer Cotter's contemporaneous police report makes no mention of Plaintiff's hands moving towards a waistband. (Dkt. No, 63-8 at 15.).  Thus, for the reasons explained above, a reasonable trier of fact could find that Officer Cotter did not see Plaintiff putting his hands near his waistband.  A trier of fact might find that Plaintiff did so, and that the strikes were therefore reasonable. But drawing all reasonable inferences in Plaintiff's favor, the Court cannot conclude that the jury *must* find the facts in such a way as to make the blows to the face reasonable as a matter of law.

A genuine dispute also exists as to the reasonableness of the force used after Plaintiff was handcuffed.  With respect to Plaintiff's testimony as to the force on his neck, Officer Cotter attests:

> As the officers were searching Plaintiff, he tensed up and fell to his side. I then placed my hand on the back of Plaintiff's neck in order to control Plaintiff and force him to sit up. I did so because other officers were still in the process of searching Plaintiff and I was still concerned

---

[2] Defendants contend that Plaintiff's declaration testimony that Officer Cotter was kneeing him is contradicted by his deposition testimony.  (Dkt. No. 73 at 11.)  But they do not identify the deposition testimony so the Court cannot conclude that the declaration statement "clear[ly] and unambiguous[ly]" contradicted the deposition testimony. *See Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).

4

>Plaintiff was armed. I then asked Plaintiff whether he had a gun. Plaintiff said he did not. I let go of Plaintiff's neck once the search was completed.

(Dkt. No. 63-1 at ¶ 18.)  While some force to hold up Plaintiff to be searched would be reasonable as a matter of law, Plaintiff testifies to, and the body cam video supports an inference of, "extreme force." (*See* Cotter Decl. Ex. B at 11:24:00.)  Officer Cotter does not explain how his concern about Plaintiff maybe having a gun would have justified such force given that Plaintiff was handcuffed at the time and surrounded by several officers who were searching him.  Moreover, the audio accompanying Officer Cotter's body camera footage also supports an inference that that the force used was retribution, not reasonable force to execute the search. (*Id.*)

Finally, while not identified in Plaintiff's declaration, the video shows that after Plaintiff was handcuffed, and while he was being searched, Officer Cotter came around to the front of Plaintiff and stepped hard on his ankle while Plaintiff complains that Officer Cotter is hurting him. (DeFilippo Decl. Ex. B at 11:24:30). Officer Cotter argues that he did so because he believed that Plaintiff had attempted to swing at him with his leg, and Officer Cotter needed to hold his leg down to allow the search to be completed.  Drawing all reasonable inferences in Plaintiff's favor, however, Officer Defillipo's and Officer Oesterich's body camera videos permit a reasonable trier of fact to find that Officer Cotter could not have reasonably believed that Plaintiff had attempted to swing his foot at him or that the force used was necessary.  (*Id.*; Oesterich Decl. Ex. B. at 11:24:30.)

Defendants' reliance on *Gammage v. City of San Francisco*, 2020 WL 1904498 *13 (N.D. Cal. April 17, 2020), is unpersuasive.  The videos there established the undisputed facts of the plaintiff's escalating dangerous behavior, including refusing to turn his car off, leaving it in drive, yelling at the officers, and ignoring repeated demands, justifying the force used to pull the plaintiff out of his car and arrest him.  Here, in contrast, Plaintiff does not dispute the force used to pull him off his motorcycle.  Also here, in contrast, the videotape does not establish undisputed facts; instead, the videotapes are not clear or are subject to varying inferences.  This is not a case in which the facts can be recounted "in the light depicted by the videotape." *Id.* at *1; *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018) ("The mere existence of video footage of the

5

1  incident does not foreclose a genuine factual dispute as to the reasonable inferences that can be
2  drawn from that footage").

### C. Officer Sharron

Defendants' motion for summary judgment argued that the complaint does not allege any facts as to Officer Sharron and that there is no evidence to support a claim against him. Plaintiff's opposition does not address this argument. Accordingly, as Plaintiff has not identified any facts upon which a reasonable trier of fact could find Officer Sharron liable, and the parties' evidence does not reveal and basis for liability, summary judgment is granted in Officer Sharron's favor.

### D. Officers Williams, Cowhig and Defillipo

Plaintiff contends that Officers Williams and Cowhig and Defillipo are liable under section 1983, not for their own use of force, but for failing to intervene to stop the force used by Officers Oesterich and Cotter or as integral participants. The record does not support such a finding as to any of these officers.

#### 1. Failure to Intervene

"[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen. Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000), as amended (Oct. 31, 2000) (cleaned up).

It is undisputed that none of these officers had the opportunity to intercede when Officer Oesterich first used force upon pulling Plaintiff from his motorcycle; they were not close enough to intervene and had no way of knowing what Officer Oesterich was about to do. As for the subsequent force, Officer Cowhig declares: "I did not observe Officers Oesterich or Cotter apply any force to Plaintiff. I did not see either officer punch, kick or knee the Plaintiff." (Dkt. No. 63-4 ¶ 14.) Officer Defillipo similarly denies seeing any of the force about which Plaintiff complains. (Dkt. No. 63-7 ¶ 19.) Plaintiff does not acknowledge this testimony, let alone identify evidence that creates a genuine dispute of fact. Officer Williams does not attest that he did not see any force; but he does declare that he was focused at all times on getting Plaintiff handcuffed. (Dkt. No. 63-18 ¶ 16.) In any event, Plaintiff does not identify any evidence from which a reasonable

6

1  trier of fact could infer that Officer Williams had an opportunity to intervene.  (Dkt. No. 66 at 5-
2  6.)  Summary judgment must be granted to Officers Cowhig, Defillipo and Williams on the failure
3  to intervene claim.

### 2. Integral Participants

Plaintiff relies on *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009) and *Boyd v. Benton Cnty*, 374 F.3d 773, 780 (9th Cir. 2004), for the proposition that Officers Cowhig, Defillipo and Williams can be liable as "integral participants" for the alleged excessive force of Officers Oesterich and Cotter.  Not so.  In *Hopkins*, the Ninth Circuit explained that the "integral participant" rule supports liability for officers who guard the door with a gun during an unconstitutional search.  Plaintiff makes no effort to apply the law articulated in that search case to the facts of this case.  And in *Boyd*, the Ninth Circuit held that officers involved in a search where a flash-bang device was tossed into an occupied apartment could be held liable for excessive force under an integral participant theory because the evidence supported a finding that "every officer was aware of the decision to use the flash-bang, did not object to it, and participated in the search operation knowing the flash-bang was to be deployed." 374 F.3d at 780.  Here, in contrast, as explained in the context of Plaintiff's failure to intervene theory, the evidence does not support a finding that these officers knew that excessive force was going to be used, or even witnessed it occurring.  Summary judgment must be granted on this theory as well.

As Plaintiff has not met his burden of identifying facts from which a reasonable trier of fact could find Officers Cowhig, Defillipo or Williams liable, summary judgment in their favor must be granted.

### E. Qualified Immunity

Officers Cotter and Oesterich insist they are at least entitled to qualified immunity.  Their argument, however, is premised on disputed issues of fact.  The Officers argue that it is undisputed that Plaintiff was "resisting the Defendant Officers' attempts to secure Plaintiff's hands for handcuffing" and that the officers "responded with commensurate levels of reasonably minimal force."  (Dkt. No. 73 at 14.)  But, as described above, a reasonable trier of fact could find Plaintiff was not resisting (as he told the officers when they directed that he stop resisting), and that he did

1  not pose a threat when the officers punched him.  Similarly, Officer Cotter's argument that he
2  needed to hold Plaintiff's neck and head to allow officers to complete their search because
3  Plaintiff refused to sit upright is based on disputed facts; the video does not compel acceptance of
4  Defendants' version of the facts.  The same is true for stepping on Plaintiff's ankle.  Where such
5  disputes exist, summary judgment is appropriate only if Defendants are entitled to qualified
6  immunity on the facts as alleged by the non-moving party.  *Blankenhorn v. City of Orange*, 485
7  F.3d 463, 477 (9th Cir. 2007).  That is not the case here.

8  A two-part test determines whether an officer is entitled to qualified immunity: first, the
9  Court decides whether the officer violated a plaintiff's constitutional right; if the answer to that
10  inquiry is "yes," the Court must determine whether the constitutional right was "clearly
11  established in light of the specific context of the case" at the time of the events in
12  question.  *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (quoting *Robinson v. York,* 566
13  F.3d 817, 821 (9th Cir.2009)).

14  Taking Plaintiff's version of events as true, *Blankenhorn*, 485 F.3d at 477, Officers Cotter
15  and Oesterich are not entitled to qualified immunity.  First, as described above, a reasonable jury
16  could find Officers Cotter and Oesterich violated Plaintiff's Fourth Amendment rights (1) when
17  Officers Cotter and Oesterich punched Plaintiff, (2) when Officer Cotter stomped on Plaintiff's
18  ankle, and (3) when Officer Cotter placed "extreme force" on Plaintiff's neck while Plaintiff was
19  handcuffed. Second, based on Plaintiff's version of events, clearly established law placed Officers
20  Oesterich and Cotter on notice that the force used here violated the Fourth Amendment.

21        **a.**    **Punches**

22  *Blankenhorn*, a Ninth Circuit case decided prior to the incident here, put Officers Cotter
23  and Oesterich on notice that "punching [an arrestee] to free his arms when, in fact, he was not
24  manipulating his arms in an attempt to avoid being handcuffed" is "a Fourth Amendment
25  violation." *Id.* at 481.  Here, as in *Blankenhorn*, Plaintiff asserts that he was not resisting
26  Defendants' attempts to handcuff him.  Under such circumstances, clearly established law
27  precludes officers from utilizing face strikes to handcuff a subject.
28

### b. Stepping on the Ankle

*Blankenhorn* also held that the use of ankle restraints on a handcuffed, non-resisting individual constituted a Fourth Amendment violation. *Id.* There, the Ninth Circuit found no reasonable officer would have believed "hobble" restraints, "in addition to handcuffs, were necessary, to maintain control of [the plaintiff] and prevent possible danger to passersby." *Id*. A jury could find the conduct here was even more extreme: rather than use a restraining tool, Officer Cotter stepped hard on Plaintiff's ankle with his own foot—allegedly without any reason to do so—while Plaintiff informed Officer Cotter that he was in pain. Taking Plaintiff's version of events as true at this stage, Officer Cotter's actions violated a handcuffed and non-resisting arrestee's clearly established right to be free of gratuitous ankle restraint.

### c. Force on the Neck

Finally, after Plaintiff was handcuffed, Plaintiff alleges "defendant Cotter intentionally grabbed [Plaintiff's] neck and pressed [Plaintiff's] head toward the ground, and kept his knee pressed with extreme force on [Plaintiff's] neck and head area." (Dkt. No. 63-1 ¶ 10.)  The Ninth Circuit has clearly established that applying extreme force to the neck and head area of a handcuffed, non-resisting, and surrendered arrestee is a Fourth Amendment violation. *See Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003); *Barnard v. Theobald*, 721 F.3d 1069, 1073, 1075 (9th Cir. 2013). Thus, based on Plaintiff's alleged non-resistance, a reasonable officer would have known that the force used here was excessive.

\*\*\*

Because Officers Cotter and Oesterich are not entitled to qualified immunity at this stage, their motion for summary judgment on Plaintiff's Section 1983 claim is DENIED.

## II. State Law Claims

### A. Negligence and Battery (Second and Third Causes of Action)

#### 1. Government Tort Claims Act

Before a plaintiff brings suit against a California public entity for money damages, the plaintiff must comply with the Government Tort Claims Act, Cal. Gov't Code § 810 et seq. The Act generally requires the plaintiff to present "all claims for money or damages against local

9

public entities" and public employees in their official capacity to the entity before bringing suit. Cal. Gov't Code § 905; *Massa v. Southern Cal. Rapid Transit Dist.*, 43 Cal. App. 4th 1217, 1221–22 (1996) (noting that Cal. Gov't Code § 950.6 "requires a written claim for money or damages for injury be presented to the employing public entity as a prerequisite to suing the agency or any of its employees who are claimed to have acted within their official capacity").

Here, there is no dispute that Plaintiff presented a timely claim to San Francisco. Defendants nonetheless contend that the claim was inadequate as a matter of law because it described the time of the incident as 8:45 p.m., 14 hours after the incident actually occurred. The Court is unpersuaded. The Act requires the plaintiff to identify the "date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted." Cal. Gov't Code § 910(c). The claim did so. It correctly identified Plaintiff's name, and the date and location of the occurrence. It also identified the name and contact information of Plaintiff's attorney. Defendants cite no case, and the Court is not aware of any, which holds that merely getting the time of an incident incorrect renders the notice inadequate as a matter of law. A plaintiff need only "substantially comply" with the claim presentation requirement and "the test for substantial compliance is whether the face of the filed claim discloses sufficient information to enable the public entity to make an adequate investigation of the claim's merits and settle it without the expense of litigation." *Connelly v. Cnty. of Fresno*, 146 Cal. App. 4th 29, 38 (2006). Plaintiff substantially complied.

### 2. Merits

Plaintiff's negligence and battery claims against Officers Oesterich and Cotter survive for the same reasons his Section 1983 excessive force claims survive. The claims likewise fail against Officers Cowhig, Williams and Defillipo for the reasons explained above.

### B. Bane Act (Fourth Cause of Action).

The Bane Act "provides a cause of action for violations of a plaintiff's state or federal civil rights committed by 'threats, intimidation, or coercion.'" *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. 2014) (quoting Cal. Civ. Code § 52.1). The Act does not require the "threat, intimidation or coercion" element of the claim to be transactionally independent from the

constitutional excessive force violation the plaintiff alleges. It does, however, require "a specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018).

In light of the Court's ruling on the Section 1983 claim, a reasonable trier of fact could find Officers Cotter and Oesterich liable on the Bane Act claim, but not the other officers. This includes the specific intent requirement. A reasonable trier of fact could find that the officers were retaliating for Plaintiff having, in their view, intentionally assaulted Officer Oesterich.

## CONCLUSION

Defendants' motion for summary judgment is in large part premised on their argument that "[t]he undisputed video evidence shows that a reasonable officer would believe that Plaintiff had not surrendered, that he was actively evading arrest, and that he was engaged in criminal activity." (Dkt. No. 73 at 13.) The Court has reviewed the videos and disagrees that they *require* such undisputed findings. *See Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018) ("The mere existence of video footage of the incident does not foreclose a genuine factual dispute as to the reasonable inferences that can be drawn from that footage"). Drawing all reasonable inferences in Plaintiff's favor, a reasonable trier of fact could find that Officers Cotter and Oesterich used excessive force, and intended to do so. Thus, their motion for summary judgment is DENIED. However, the motion for summary judgment of the remaining officers is GRANTED as no reasonable trier of fact could find that they failed to intervene in or were integral participants in the alleged excessive force.

This Order disposes of Docket No. 63.

**IT IS SO ORDERED.**

Dated: December 12, 2022

_____
JACQUELINE SCOTT CORLEY
United States District Judge